| | |
|---|---|
| | HONORABLE RICHARD A. JONES |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| D.T. by and through his parents and guardians, K.T. and W.T., individually, on behalf of similarly situated individuals, and on behalf of the NECA/IBEW Family Medical Care Plan<br><br>Plaintiff,<br><br>v.<br><br>NECA/IBEW FAMILY MEDICAL CARE PLAN, THE BOARD OF TRUSTEES OF THE NECA/IBEW FAMLY MEDICAL CARE PLAN, SALVATORE J. CHILIA, ROBERT P. KLEIN, DARRELL L. MCCUBBINS, GEARY HIGGINS, LAWRENCE J. MOTER, JR., KEVIN TIGHE, JERRY SIMS, AND ANY OTHER INDIVIDUAL MEMBER OF THE BOARD OF TRUSTEES OF NECA/IBEW FAMILY MEDICAL CARE PLAN,<br><br>Defendants. | No. 17-cv-00004-RAJ<br><br>**ORDER** |

This matter comes before the Court on Plaintiff D.T.'s Motion to Compel. Dkt. # 28. Defendants NECA/IBEW Family Medical Care Plan (the "Plan" or "FMCP"), the

ORDER - 1

Board of Trustees of the FMCP, Salvatore J. Chilia, Robert P. Klein, Darrell L McCubbins, Geary Higgins, Lawrence J. Moter, Jr., Kevin Tighe, and Jerry Sims' (collectively, "Defendants") oppose, and Plaintiff has filed a Reply. Dkt. ## 40, 42. For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** the Motion to Compel. Dkt. # 28.

## I. BACKGROUND

Plaintiff D.T., a three-year-old dependent on his parent's NECA/IBEW Family Medical Care Plan ("Plan"), was diagnosed with a developmental mental health condition. Dkt. # 1 (Complaint) at ¶¶ 1, 22. D.T. sought coverage for either neurodevelopmental therapies (NDT) or Applied Behavior Analysis (ABA) therapy but was denied under his Policy's Development Delay Exclusion.

On or around May 18, 2015, Plaintiff's father informed the Plan that he was working with the U.S. Department of Labor regarding the Plan's Developmental Delay Exclusion, and its alleged violation of the federal Mental Health Parity and Addiction Equity Act. Dkt. # 41 at p. 2, ¶ 4. Sometime after May 18, 2015, the Plan received a post-service claims appeal from Plaintiff, requesting coverage of denied claims for various speech therapy visits with dates of service from November 17, 2014 through April 13, 2015 for Plaintiff ("First Appeal" or "Appeal No. 242"). *Id*. at p. 3, ¶ 5; Dkt. # 41-1 at 1-2. Appeal No. 242 was reviewed by the Board of Trustees on June 29, 2015, and the Board of Trustees decided to deny the appeal on that date. *Id*. at ¶ 6, Dkt. # 41-1 at 5-10. Plaintiff was informed of the denial on July 13, 2015. Dkt. # 41-1 at 11.

On or around February 2, 2016, Plaintiff submitted another appeal ("Second Appeal" or "Appeal No. 280") to the Board of Trustees. Defendants assert, and Plaintiff does not contest, that Appeal No. 280 did not relate to Plaintiff's denied claims in Appeal No. 242. Dkt. # 41 at p. 3, ¶ 7. In Appeal No. 280, Plaintiff sought pre-approval for future coverage of speech, occupational and ABA therapy visits. *Id*.; Dkt. # 41-1 at 15-23. Appeal No. 280 was reviewed by the Board of Trustees on March 17, 2016 and the

ORDER - 2

Board of Trustees decided to deny the appeal on that date. Dkt. # 41 at p. 3, ¶ 8; Dkt. # 41-1 at 25-32. Plaintiff was informed of the denial on April 29, 2016. Dkt. # 41-1 at 33-36.

Plaintiff filed suit on January 1, 2017. Dkt. # 1. As part of discovery, Plaintiff requested all internal communications regarding the Exclusion, all documents relating to appeals involving the Exclusion, and all information about how the Exclusion is administered, including the precise diagnoses and services to which it is applied. Dkt. # 29 at 7-25. In response, Defendants produced heavily redacted documents, asserting attorney-client and work product privilege. *Id.*, at p. 2, ¶ 2. Plaintiff's counsel objected that the documents must be fully disclosed pursuant to the ERISA "fiduciary exception" to attorney-client and work product privilege. *Id*. at 27-30. Defendants refused to remove or limit their redactions in the disputed documents. *Id*. at pp. 2-3, ¶¶ 3-7.

The parties met and conferred and agreed that they could not reach a resolution regarding the remaining redactions, and Plaintiff's counsel informed Defendants of her intent to file this Motion. Document production continued, and Defendants provided an updated privilege log to Plaintiff on May 15, 2018. Dkt. # 41 at pp. 4-5, ¶¶ 14-15, Dkt. # 41-1 at 67. The parties met and conferred again and could not reach an agreement regarding redactions; accordingly, Plaintiff filed this Motion to Compel. Dkt. # 28.

**II.     LEGAL STANDARD**

The Court has broad discretion to control discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see also Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011), *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988). That discretion is guided by several principles. Most importantly, the scope of discovery is broad. A party must respond to any discovery request that is not privileged and that is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance

of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

If a party refuses to respond to discovery, the requesting party "may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc.*, 175 F.R.D. 646, 650 (C.D. Cal. 1997).

### III. DISCUSSION

The parties do not dispute that the documents in question are relevant and responsive to Plaintiff's discovery requests. Instead, the parties dispute whether Defendants must produce unredacted versions of 24 documents it has redacted nearly in full due to claims of attorney-client and work-product privilege. Redacted versions of the documents in question, along with Defendants' privilege log, are contained at Appendix A to Plaintiff's Motion to Compel. Dkt. # 28-1. Plaintiff does not dispute that the documents would be privileged in normal circumstances, but contends that the "fiduciary exception," as recognized by the Ninth Circuit in *U.S. v. Mett*, 178 F.3d 1058 (9th Cir. 1999) and *Stepham v. Unum Life Ins. Co.*, 697 F. 3d 917, 931-32 (9th Cir. 2012), applies and renders the attorney-client privilege inapplicable. Dkt. # 28 at 9-12. Defendants contest that the fiduciary exception does not apply, and if it did, it should be limited. Dkt. # 40.

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice" as well as "an attorney's advice in response to such disclosures." *U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). The attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L.Ed. 2d 584 (1981) (citing 8 J. Wigmore, Evidence § 2290 (J. McNaughton rev. 1961)). Its aim is "to encourage full and frank communication between attorneys and their clients

and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389. However, "the privilege stands in derogation of the public's 'right to every man's evidence' and as 'an obstacle to the investigation of the truth,' [and] thus... '[i]t ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.'" *Ruehle*, 583 F.3d at 607 (citing *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973) (citations omitted)).

Once the attorney-client privilege has been established, the party seeking to pierce it bears the burden of showing an exception exists. One such exception exists when an ERISA trustee seeks an attorney's advice on a matter of plan administration. *Mett,* 178 F. 3d at 1063. "As applied in the ERISA context, the fiduciary exception provides that an employer acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration." *Id*. There are two asserted rationales for this exception: (1) the fiduciary duty to disclose all matters of plan administration overrides the attorney-client privilege; and (2) the fiduciary is not the real client when the advice is sought on behalf of the beneficiaries of the trust. *Id.* Under either rationale, the privilege reasserts itself as to any advice that a fiduciary obtains in an effort to protect himself or herself from civil or criminal liability. *Id*. at 1066.

Defendants first contest that the fiduciary exception does not apply to the documents in question because "none of the disputed documents involve communications that were considered as part of Plaintiff's appeal file by the Trustees," and there is "only one email correspondence where a Trustee . . . is a recipient or sender to an attorney-client communication." Dkt. # 40 at 7. The Court cannot accept such unverified and unsupported assertions, especially when the documents in question are so heavily redacted that the Court cannot determine the truth for itself. *See generally* Dkt. # 28-1. Similarly, the Court cannot determine, based on Defendants' unverified assertions, that all of the disputed documents relate only to "settlor" functions, and do not involve any

matters of plan administration. *Id.* So long as the Plan was deciding, for instance, whether or not a particular beneficiary was entitled to benefits and/or to what level, the fiduciary exception would be applicable. Moreover, as Plaintiff observes, Defendants identify no authority that specifically restricts the fiduciary exception to *only* documents considered "as part of Plaintiff's appeal file by the trustees." Dkt. ## 40 at 7, 42 at 3-4. Rather, the Court follows the Ninth Circuit's direction that the fiduciary exception applies to any communication reflecting a "matter of plan administration and where the advice clearly does not implicate the trustee in any personal capacity." *Mett*, 178 F.3d at 1064. The Court will not take Defendants' characterizations of the disputed documents on faith, especially when they do not comport with Ninth Circuit precedent.

Defendants further contest that even if the fiduciary exception applies, it stopped applying as soon as the interests between Plaintiff and the trustees diverged. Dkt. # 40 at 7-11. Defendants first argue that the interests diverged starting May 18, 2015, the date where Plaintiff informed the Plan that he was working with the U.S. Department of Labor, and first asserted that the Developmental Delay Exclusion violated the Parity Act. *Id.* at 7-8. Defendants claim that these actions placed the Plan in an "adversarial position to Plaintiff's interests," discharging the fiduciary exception. Dkt. # 40 at 8. The Court rejects this argument. As stated, correctly, by a case relied on heavily by Defendants, "[c]ourts have regularly rejected the notion that the possibility a claim will be denied results in a divergence of interests," such that "most documents prior to the final determination of the claim will fall within the [fiduciary] exception." *Klein v. Nw. Mut. Life Ins. Co.*, 806 F. Supp. 2d 1120, 1132-33 (S.D. Cal. 2011); Dkt. # 40 at 4-6, 8-9. In *Klein*, for instance, the court rejected an argument that plaintiff's "aggressive' posture" pre-determination, where plaintiff leveraged his status as a litigation partner and stated he would see defendants on the "witness stand," was not enough to deny him documents used in the adjudication of his claim. *Klein*, 806 F. Supp. 2d at 1133. As explained by *Klein*, Defendants' argument "fails to recognize that while the claim was still being

ORDER - 6

adjudicated, Defendants were acting as ERISA fiduciaries, preparing a response to the claim, and acting in the ordinary administration of the plan." *Id.*

The Ninth Circuit has explained that communications occurring in advance of the defendant's decision on the plaintiff's benefits appeal do not discharge the fiduciary exception, as "[m]ost courts have held that it is not until after the final determination—that is, after the final administrative appeal—that the interests of the Plan fiduciary and the beneficiary diverge for purposes of application of the fiduciary exception," and that the Ninth Circuit agreed "with the weight of authority." *Stepham v. Unum Life Ins. Co.*, 697 F. 3d 917, 931-32 (9th Cir. 2012). In *Stepham*, the Ninth Circuit concluded that the fiduciary exception applied to the documents because "advice on the amount of benefits [the plaintiff] was owed under the Plan, given before [the defendant] had made any final determination on his claim, constitutes advice on plan administration." *Id.; see also A.F. v. Providence Health Plan*, 173 F. Supp. 3d 1061, 1077 (D. Or. 2016). Generally, a simple "indication that the parties may become adverse," such as communication from potential litigation counsel, is insufficient to discharge the fiduciary exception. *Stepham*, 697 F.3d at 933. This Court follows similar logic here. The Plan had fiduciary responsibilities toward Plaintiff, a Plan beneficiary, up and until final denials of Plaintiff's claims. These fiduciary responsibilities were not discharged by Plaintiff's seeking involvement from the U.S. Department of Labor or the vague threats of future litigation; so long as Defendants were considering Plaintiff's appeal and making a determination of coverage, they were acting in a fiduciary capacity, and the fiduciary exception would apply.

Defendants next argue that the fiduciary exception should not apply to any documents created after the Plan's final determination of Plaintiff's first appeal on June 29, 2015. Dkt. # 40 at 9. This is partially correct. Plaintiff's first claim and appeal, Appeal No. 242, which concerned Plaintiff's claims for speech therapy benefits,

terminated on June 29, 2015.[1]  With respect to plan administration related to speech therapy benefits, the fiduciary exception applies to documents relating to plan administration before that date (so long as they do not relate to potential civil or criminal liability for the Trustees).  Accordingly, the Court **DENIES** Plaintiff's Motion to Compel to the extent it seeks communications related to the speech therapy benefits sought in Appeal No. 242 dated after the final denial of that claim (June 29, 2015).

Plaintiff's second claim and appeal, Appeal No. 280, which terminated on March 17, 2016, concerned Plaintiff's claims for Applied Behavior Analysis and occupational therapy benefits; the fiduciary exception applies to documents relating to plan administration before that date, subject to the same limitations.  Communications and documents dated after March 17, 2016, the final denial of Plaintiff's second claim, are not subject to the fiduciary exception.  Appendix A documents 6-10, each reflecting communications between the Plan and outside counsel, were all created in 2017.  Dkt. # 28-1 at 28-44.  At this point, the parties were engaged in active litigation, their interests clearly diverged, and communications between the plan and its litigation counsel would not be subject to the fiduciary exception.  The Court also believes that Defendants have adequately provided bases for redacting these documents under the attorney-client

---

[1] Plaintiff indicates that the "final determination" dates should be July 13, 2015 and April 29, 2016, because these are the dates in which the Plan sent its final denial letters to Plaintiff for the First and Second Appeal. Dkt. # 28 at 13; Dkt. # 42 at 3.  However, this argument ignores the fact that the Plan actually decided to deny Plaintiff's appeals, which dealt with separate claims, on June 29, 2015 and March 17, 2016, the dates of the Board of Trustees meetings.  Dkt. # 41-1 at 5-9, 25-32.  Plaintiff cites no authority for why the communication date for a "final determination" *on appeal* should control over the actual date of the determination. Plaintiff only cites vaguely to 29 C.F.R. § 2560.503-1(f)-(h), which does not provide a definitive "final determination" date for *appeals* of an "adverse benefit determination."  Dkt. # 42 at 5.  Accordingly, the Court considers July 13, 2015 and March 17, 2016 to be the dates of the "final determinations" for the First and Second Appeals, respectively.

privilege as required under Fed. R. Civ. P. 26(b)(5). Dkt. # 28-1 at 4-7. Accordingly, the Court **DENIES** Plaintiff's Motion to Compel as to documents 6-10.

Ultimately, the Court **GRANTS IN PART** Plaintiff's Motion to Compel as to the remaining documents in dispute, subject to the limitations described in this Order. Plaintiffs are entitled to communications reflecting matters of plan administration subject to the timeframe and subject matter limitations discussed above. Plaintiffs are not entitled to documents that reflect concerns or discussions reflecting potential criminal or civil liability for individual Plan Trustees. If any document includes both discussions concerning plan administration and concerns over Trustee liability, the parties are ordered to explore whether the documents can be partially redacted to provide Plaintiff with only the communications dealing with plan administration.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion to Compel. Dkt. # 28. The Court has given the parties guidance as to the appropriate application of the fiduciary exception, the subject matter, and the timeframe of documents that are to be produced in an unredacted or partially redacted format. The Court orders the parties to meet and confer to determine if the documents identified as Documents 1-5, 11-24 in Appendix A can be produced consistent with this Order. If the parties cannot reach an agreement, they may petition this Court for an additional determination, hearing, or in-camera review.

Dated this 12th day of September, 2018.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge

ORDER - 9