HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| D.T. by and through his parents and guardians, K.T. and W.T., individually, on behalf of similarly situated individuals, and on behalf of the NECA/IBEW Family Medical Care Plan<br><br>Plaintiff,<br><br>v.<br><br>NECA/IBEW FAMILY MEDICAL CARE PLAN, THE BOARD OF TRUSTEES OF THE NECA/IBEW FAMLY MEDICAL CARE PLAN, SALVATORE J. CHILIA, ROBERT P. KLEIN, DARRELL L. MCCUBBINS, GEARY HIGGINS, LAWRENCE J. MOTER, JR., KEVIN TIGHE, JERRY SIMS, AND ANY OTHER INDIVIDUAL MEMBER OF THE BOARD OF TRUSTEES OF NECA/IBEW FAMILY MEDICAL CARE PLAN,<br><br>Defendants. | CASE NO. C17-00004 RAJ<br><br>ORDER |

ORDER - 1

This matter comes before the Court on Plaintiff's Motion for Class Certification. Dkt. # 34. Defendants NECA/IBEW Family Medical Care Plan (the "Plan" or "FMCP"), the Board of Trustees of the FMCP, Salvatore J. Chilia, Robert P. Klein, Darrell L McCubbins, Geary Higgins, Lawrence J. Moter, Jr., Kevin Tighe, and Jerry Sims' (collectively "Defendants") oppose the Motion, and Plaintiff has filed a Reply. Dkt. ## 45, 47. For the reasons that follow, the Court **GRANTS** Plaintiff's Motion.

I.  BACKGROUND

Plaintiff D.T., a three-year-old dependent on his parent's NECA/IBEW Family Medical Care Plan ("Plan"), was diagnosed with a developmental mental health condition. Dkt. # 1 (Complaint) at ¶¶ 1, 9, 22-25; Dkt. # 17-1, Exs. B-D. Defendant FMCP is a multiemployer health and welfare plan within the meaning of Section 3(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1), that has been established pursuant to an agreement entered into between the International Brotherhood of Electrical Workers ("IBEW") and the National Electrical Contractors Association ("NECA") for the purpose of providing major medical benefits to covered employees. Dkt. ## 11-1, 11-2.

Under the Plan, Defendants, who also comprise the Board of Trustees for the Plan, cover mental health services to treat mental health conditions. *See* Dkt. # 11-3, §§1.35. The Plan covers certain "mental health or nervous disorder" benefits. The definition of "mental or nervous disorder" is broadly defined:

> A neurosis, psychoneurosis, psychopathy, psychosis or mental or emotional disease or disorder of any kind, regardless of whether such condition, disease or disorder has causes or origins which are organic, physiological, traumatic or functional.

*Id*. (defining "mental or nervous disorder"). It is unclear whether autism spectrum disorder (ASD) falls within the definition. Plaintiff claims that it does. Dkt. # 1 at ¶ 24;

*see also* Dkt. # 16 at 12 (Plaintiff reiterates that the definition "encompasses ASD and other developmental conditions.").

The Plan excludes coverage for benefits related to development delays. Specifically, in a section titled, "Benefit Plan Conditions, Limitations and Exclusions," the Plan states that charges are not payable for the following:

> Developmental delays, including charges for development and neuro-educational testing or treatment, hearing therapy, therapy for learning disability, communication delay, perceptual disorders, sensory deficit, developmental disability and related conditions, or for other special therapy not specifically included as a Covered Medical Expense elsewhere in this document, whether or not such disorder is the result of an injury or sickness.

Dkt. # 11-3 at 48. D.T. sought coverage for either neurodevelopmental therapies ("NDT") or Applied Behavior Analysis ("ABA") therapy but was denied under his Plan's Development Delay Exclusion. Dkt. # 17-1. Plaintiff alleges this exclusion is a "uniform policy excluding all coverage for NDT and ABA therapies to treat developmental mental health conditions like ASD, even when medically necessary." Dkt. # 1 at ¶ 9. Plaintiff claims that the Plan covers other benefits associated with developmental mental health conditions, and therefore the uniform exclusion of coverage for NDT and ABA therapy is a violation of the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("Parity Act"). Dkt. ## 1, 16. Defendants argue that the Plan legitimately excludes coverage for any developmental mental health conditions, and therefore there is no Parity Act violation for its refusal to cover NDT or ABA therapy benefits. Dkt. # 11.

Plaintiff filed his Complaint on January 4, 2017. Dkt. # 1. Plaintiff asserted three ERISA claims against Defendants: (1) recovery of benefits; (2) breach of fiduciary duty; and (3) equitable relief. *Id.* at ¶¶ 26-39. On March 10, 2017, Defendants moved to dismiss Plaintiff's claims, which this Court denied. Dkt. ## 11, 20. On June 8, 2018,

Plaintiff filed the present Motion for Class Certification, which is now before the Court. Dkt. # 34.

## II. LEGAL STANDARD

The Court's decision to certify a class is discretionary. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009). Federal Rule of Civil Procedure 23 ("Rule 23") guides the Court's exercise of discretion. A plaintiff "bears the burden of demonstrating that he has met each of the four requirements of Rule 23(a) and at least one of the [three alternative] requirements of Rule 23(b)." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007). Rule 23(a) requires a plaintiff to demonstrate that the proposed class is sufficiently numerous, that it presents common issues of fact or law, that it will be led by one or more class representatives with claims typical of the class, and that the class representative will adequately represent the class. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982); Fed. R. Civ. P. 23(a). If a plaintiff satisfies the Rule 23(a) requirements, he must also show that the proposed class action meets one of the three requirements of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

In considering Rule 23's requirements, the Court must engage in a "rigorous analysis," but a "rigorous analysis does not always result in a lengthy explanation or in depth review of the record." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005) (citing *Falcon*, 457 U.S. at 161). The Court is neither permitted nor required to conduct a "preliminary inquiry into the merits" of the plaintiff's claims. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974)); *see also* Fed. R. Civ. P. 23 advisory committee's note (2003) ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision."); *but see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (suggesting that Rule 23 analysis may be inextricable from some judgments on the merits in a particular case). The Court may assume the truth of a plaintiff's substantive

allegations, but may require more than bare allegations to determine whether a plaintiff has satisfied the requirements of Rule 23. *See*, *e.g.*, *Blackie*, 524 F.2d at 901, n.17; *Clark v. Watchie*, 513 F.2d 994, 1000 (9th Cir. 1975) ("If the trial judge has made findings as to the provisions of the Rule and their application to the case, his determination of class status should be considered within his discretion.").

### III. DISCUSSION

Plaintiffs seek to certify the prospective class defined as follows:

> All individuals who:
>
> 1) Have been, are or will be participants or beneficiaries under the NECA-IBEW Family Medical Care Plan at any time on or after January 4, 2011; and
> 2) Require neurodevelopmental therapy (speech, occupational or physical therapy) or applied behavior analysis therapy to treat a qualified mental health condition.
>
> Definition: The term "qualified mental health condition" shall mean a condition listed in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association to which defendants applied and/or currently apply the Plan's Developmental Delay Exclusion.

Dkt. # 1, ¶ 12. Defendants assert two main objections to Plaintiff's proposed class definition. The Court discusses each in turn.

*a. Ascertainability*

Defendants first contend that Plaintiff's proposed class is "overly broad and not ascertainable." Dkt. # 45 at 4-6. "Rule 23 does not explicitly contain a requirement that a class be ascertainable, however, many courts have found ascertainability to be a prerequisite to class certification." *See e.g., Torres v. Mercer Canyons, Inc.,* 305 F.R.D. 646, 651 (E.D. Wash. 2015); *In re ConAgra Foods, Inc.,* 302 F.R.D. 537, 564 (C.D. Cal. 2014); *In re Clorox Consumer Litig.,* 301 F.R.D. 436, 440 (N.D. Cal. 2014); *Agne v. Papa John's Int'l, Inc.,* 286 F.R.D. 559, 566 (W.D. Wash. 2012) (quoting *O'Connor v.*

*Boeing N. Am., Inc.,* 184 F.R.D. 311, 319 (C.D. Cal. 1998)). "A class is sufficiently defined and ascertainable if it is 'administratively feasible for the court to determine whether a particular individual is a member.'" *In re ConAgra Foods, Inc.,* 302 F.R.D. at 565 (quoting *O'Connor,* 184 F.R.D. at 319). "Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry." *Lilly v. Jamba Juice Co.,* No. 13–CV–02998–JST, 2014 WL 4652283, at *3 (N.D. Cal. Sept.18, 2014) (quoting William B. Rubenstein, *Newberg on Class Actions* ("Newberg") § 3:3 (5th ed.)).

In other words, in order for a plaintiff to establish that a class is ascertainable, they must show that: "(i) members of the proposed class are readily identifiable by objective criteria, and (ii) it is administratively feasible to determine whether a particular person is a member of the class." *Kosta v. Del Monte Foods, Inc.,* 308 F.R.D. 217, 227 (N.D. Cal. 2015) (citing *Xavier v. Philip Morris USA Inc.,* 787 F.Supp.2d 1075, 1089 (N.D. Cal. 2011)); *see also Byrd v. Aaron's Inc.,* 784 F.3d 154, 163 (3d Cir. 2015). Nevertheless, "the class need not be so ascertainable that every potential member can be identified at the commencement of the action." *Mazur v. eBay Inc.,* 257 F.R.D. 563, 567 (N.D. Cal. 2009) (quoting *O'Connor,* 184 F.R.D. at 319).

Defendants argues that Plaintiff's proposed class is overbroad and not ascertainable because it "does not consider whether proposed class members submitted a claim, had claims denied in the past, or whether they are likely to have claims denied in the future." *Id*. at 5. Defendants also argue that because this definition does not stipulate to "medical or a denial prohibited by [the Parity Act]," the class is not ascertainable because each participant will need to be analyzed individually. *Id*. at 5-6.

The Court is unpersuaded by these arguments. The universe of proposed class members is one limited to Plan participants, and only those that "require" NDT or ABA to treat a "qualified mental health condition." Dkt. # 34 at 4-5. The proposed class members are thus readily identifiable through objective criteria. Moreover, the proposed

class members, under the Plan's Developmental Delay Exclusion, would all be treated the same: any claim for NDT or ABA treatment related to their qualifying condition would be denied. *See Herra v. LCS Fin. Services Corp.*, 274 F.R.D. 666, 672–73 (N.D. Cal. 2011) ("What was ascertainable to [defendant] in the course of adhering to its own policy is ascertainable for the purposes of identifying members of the class."). Thus, in the same way it is "administratively feasible" for Defendants to identify the types of claimants and benefits the Developmental Delay Exclusion applies to, the Court believes it "administratively feasible" to identify the proposed class members. Moreover, as Plaintiff notes, participants are not necessarily required to submit claims and receive denials to seek relief under ERISA provisions. *See, e.g., Wit v. United Behavioral Health*, 14-CV-02346-JCS, 2017 WL 3478775, at *12 (N.D. Cal. Aug. 14, 2017) (finding that "whether an ERISA claim is styled as a breach of fiduciary duty claim or a denial of benefits claim," plaintiffs need not demonstrate that "they were actually denied benefits" to establish injury); *see also Shaver v. Operating Engineers Local 428 Pension Tr. Fund*, 332 F.3d 1198, 1203 (9th Cir. 2003) (finding that showing of loss not necessary for an ERISA breach of fiduciary duty claim). Accordingly, not every putative class member would need to submit a claim and face denial to be part of an ascertainable class in this ERISA action.

    The Court has little problem ascertaining the scope of Plaintiff's proposed class.[1] Even if it did, however, "[a] lack of ascertainability alone will not defeat class

---

[1] As to Defendant's brief argument that the proposed class is deficient because it includes participants who may not have exhausted their administrative remedies, "a district court has discretion to waive the exhaustion requirement . . . and should do so when exhaustion would be futile." *Horan v. Koch*, 947 F.2d 1412, 1416 (9th Cir. 1991) (overruled on other grounds). The evidence shows that Defendants have consistently and routinely interpreted their policies to deny coverage for participants with developmental disabilities (such as autism). Under these circumstances, exhaustion would be futile. To the extent Defendants seek to eliminate potential class members on exhaustion grounds, the Court would therefore exercise its discretion and waive exhaustion for D.T. and putative class members.

certification," the Court would still continue to analyze whether the requirements of Rule 23 have been met. *See Algarin v. Maybelline, LLC,* 300 F.R.D. 444, 457 (S.D.Cal.2014) (citing *Red v. Kraft Foods, Inc.,* No. CV 10–1028–GW(AGRx), 2012 WL 8019257, at *6 (N.D. Cal. Apr.12, 2012)).

b.   *Future Participants*

Defendants next argue that the proposed class should not include those who "will require" NDT therapies because there is "no legal mandate to provide coverage to future participants." Dkt. # 45 at 6-11. Defendants argue, at length, that there is no federal law that mandates Defendants cover NDT therapies or services for participants with developmental delays. *Id*. at 6-9. Defendants conclude that this lack of a legal mandate to provide coverage affords Defendants the "right at all times to eliminate coverage of various benefits and services for a particular condition in the Plan." *Id*. at 9-11. Defendants reason that because they cannot be forced to cover specific benefits and can remove them at any time, it would be inappropriate to certify "future" class members based on ERISA claims for benefits that may not exist in future iterations of the Plan. *Id*.

As Plaintiff rightly observes, Defendants' argument here echoes the arguments set forth in their motion to dismiss. Dkt. # 11; Dkt. # 45 at 6-9; Dkt. # 47 at 5. The Court denied Defendants' motion then, reasoning that if the Plan covers certain benefits for beneficiaries diagnosed with ASD but refuses to cover ABA therapy, then this may be a violation of the Parity Act. Dkt. # 20 at 4-5. The Court sees little reason to change that ruling at this stage, particularly because a defendant cannot defeat class certification by arguing that it will win on the merits, which is what Defendants seemingly attempt to do here. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465–66 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."); *Alcantar v. Hobart Serv*., 800 F.3d 1047, 1053 (9th Cir. 2015).

As for the discretionary nature of the Plan's coverage applying to future participants, the Court agrees with Plaintiffs that this concern goes to the form of relief,

not the question of certification. Dkt. # 47 at 6. The nature of Parity Act allegations ensure that they will be directed at coverage policies that are likely discretionary in the first instance. This is because "[a] permanent exclusion of all benefits for a particular condition or disorder . . . is not a treatment limitation[.]" 29 C.F.R. § 2590.712(a). However, once a group plan decides to provide coverage for mental health benefits, then it may not apply "any financial requirement or treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant financial requirement or treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification." 29 C.F.R. § 2590.712(c)(2)(i). Thus, so long as the Plan provides mental health benefits and the Developmental Delay Exclusion exists (as it does currently), the possibility of a Parity Act violation persists, and the proposed class premised on these violations would remain viable. *See, e.g., A.F. ex rel. Legaard v. Providence Health Plan*, 300 F.R.D. 474, 485 (D. Or. 2013) (granting certification despite argument that plan changed policies directed to future claimants because subject practice was still being applied to previous claimants and could continue unless enjoined). Moreover, even if the Court accepts Defendants' arguments at face value, it would be reluctant to deny class certification based solely on the speculation that Defendants may change their Plan language at some unidentified point in the future. The Court will decline to do so here.

Having rejected Defendant's threshold arguments against Plaintiff's proposed class definition, the Court next turns to whether the proposed class meets the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy.

1. <u>Numerosity</u>

Numerosity is satisfied where joinder would be impracticable. *Smith v. Univ. of Wash. Law Sch.*, 2 F. Supp. 2d 1324, 1340 (W.D. Wash. 1998) (citing *Harris v. Palm Spring Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964). There is no set numerical cutoff used to determine whether a class is sufficiently numerous; courts must examine

the specific facts of each case to evaluate whether the requirement has been satisfied. *See Gen. Tel. Co. of the Nw., Inc. v. Equal Emp't Opportunity Comm'n,* 446 U.S. 318, 329–30 (1980). "As a general rule, [however,] classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough." *Keegan v. Am. Honda Motor Co., Inc.,* 284 F.R.D. 504, 522 (C.D. Cal. 2012) (quoting *Ikonen v. Hartz Mountain Corp.,* 122 F.R.D. 258, 262 (S.D. Cal. 1988)).

Plaintiff contends that the proposed class is "at least" 40 individuals, pointing to a discovery response from Defendants that admitted that at least 40 unique individuals have actually submitted claims with a "developmental delay" diagnostic code subject to exclusion under the Plan. Dkt. # 38, Ex. K. Plaintiff also points to a deposition from the Plan's 30(b)(6) witness, who estimates that that the number of persons with developmental delay conditions enrolled in the Plan who were under age 26 in 2016 totaled more than 3,300. *Id.,* Ex. F at 4; Ex. G, at 7:2-9; 103:15-104:19.

The Court finds that the evidence put forth by Plaintiffs adequately demonstrates that the proposed class would be at least 40 individuals, and likely more. Defendants claim that this evidence is "over-inclusive" because it may include participants that do not share Plaintiff's claim. Dkt. # 45 at 12. Defendants also argue that Plaintiff has not shown evidence that other potential class members were denied their claim for benefits, and therefore were not "harmed." *Id*. The Court does not find these arguments convincing. The first argument appears to be a retread of Defendants' argument on commonality, which the Court addresses, and rejects, below. Defendants' second argument appears to be that Plaintiff has failed to demonstrate that all of the proposed class members would have standing. This argument is also somewhat out of place in a numerosity analysis, but is in any case is unavailing, as only D.T., the named Plaintiff, need have standing, which Defendants do not contest. *See, e.g., Jordan v. City of Lynnwood*, C17-0309-RAJ, 2018 WL 501572, at *3 (W.D. Wash. Jan. 22, 2018) ("In a

class action, standing is satisfied if at least one named plaintiff meets the requirements") (citing *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007)). Moreover, Defendants fail to dispel the 40 potential class members whose claims with a "developmental delay" diagnostic code were actually submitted. Even if the Court considers just these participants, the Court would find the proposed class sufficiently numerous.

Accordingly, the Court finds that the numerosity requirement is met.

2. Commonality

To meet the commonality requirement, a plaintiff must demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has explained that this requirement is better understood as an inquiry into the capacity of a class wide proceeding to generate common *answers* apt to drive the resolution of the litigation. *Dukes*, 564 U.S. at 350. Commonality only requires a single significant question of law or fact. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012).

Plaintiff identifies the following, significant common question: Does Defendants' exclusion of NDT and ABA therapies for the treatment of DSM mental health conditions that they consider to be "developmental delays" violate the federal Mental Health Parity Act? Dkt. # 34 at 12. Plaintiff also identifies several other common questions: (1) whether Defendants wrongfully withheld benefits from D.T. and the proposed class; (2) whether Defendants misinformed its participants and beneficiaries about their coverage rights; and (3) if Defendants breached their fiduciary duties to developmentally delayed enrollees. Dkt. # 34 at 13. The Court agrees that resolution of these significant common questions will resolve several issues that are central to the validity of each claim.

Defendants argue that resolution of these common questions "will not resolve whether the Plan improperly denied a service for any particular individual member of the proposed class." Dkt. # 45 at 13. Defendants argue that individual differences in

whether participants submitted a claim, were denied, had the medical necessity for the requested treatments, or had different treatment protocols mean that Plaintiff's claims lack commonality. *Id.* at 13-14.

The Court disagrees. Defendants' arguments against commonality regarding individualized issues such as the individual "medical necessity" of the treatments would go to preponderance under Rule 23(b)(3), not whether there are common issues under Rule 23(a)(2). *See Mazza*, 666 F.3d at 589 ("Even assuming arguendo that we were to agree with Honda's 'crucial question' contention, the individualized issues raised go to preponderance under Rule 23(b)(3), not to whether there are common issues under Rule 23(a)(2)."). Moreover, the proposed class members have in common the issue of whether the Developmental Delay Exclusion violates the Parity Act, regardless of whether a claim was made or whether individual differences in treatment protocols exist. *See A.F. ex rel. Legaard v. Providence Health Plan*, 300 F.R.D. 474, 481–82 (D. Or. 2013) (holding that issue of whether plan's "Developmental Disabilities Exclusion violates state or federal law" satisfied commonality); *Z.D. v. Group Health Cooperative,* No. C–11–1119–RSL, 2012 WL 5033422, at *4 (W.D. Wash. Oct. 17, 2012) (holding that the issue of whether Defendant's policy of limiting coverage "on the basis of beneficiaries' ages amounted to a breach of their fiduciary duties" was a common issue); *In re Louisiana–Pacific Corp.,* No. Civ. 02–1023–KI, 2003 WL 23537936, at *4 (D. Or. Jan. 24, 2003) (holding that defendant's breach of fiduciary duties under ERISA was a common issue despite other individual distinctions among class members). A singular resolution of this common issue on a class-wide basis will settle this particular question for all putative class members.

Finally, the Ninth Circuit does not require that every common question be capable of classwide resolution—rather, so long as a single question exists, this requirement may be satisfied. *See Wang v. Chinese Daily News, Inc.,* 737 F.3d 538, 544 (9th Cir.2013) ("Plaintiffs need not show that every question in the case, or even a preponderance of

questions, is capable of classwide resolution. So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2).") (quoting *Dukes,* 564 U.S. at 358). Given this relative liberal treatment of commonality, the Court finds that Plaintiff has satisfied the commonality requirement.

3. <u>Typicality</u>

Under Rule 23(a)(3), the claims or defenses of the class representatives must be typical of the claims or defenses of the class. *See* Fed. R. Civ. P. 23(a)(3). This requirement is generally satisfied so long as the named plaintiffs' claims are "reasonably coextensive" with those of absent class members. *See Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003). In other words, the question for "typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured in the same course of conduct." *See In re Wash. Mut. Mortgage–Backed Secs. Litig.,* 276 F.R.D. 658, 665 (W.D. Wash. 2011) (quoting *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992)).

Plaintiff D.T. argues that his claims are typical of those in the proposed class because he (1) like the others, is enrolled in the Plan; (2) is diagnosed with a DSM mental health condition that Defendants subject to the Developmental Delay Exclusion; and (3) has an ongoing need for certain therapies, such as NDT and ABA therapies, to treat his condition. Dkt. # 34 at 14. Defendants argue that D.T.'s claims are not typical because (1) there is an open issue of medical necessity for Plaintiff's claims; (2) Plaintiff's treatment protocols have changed over time; and (3) each potential class member would require an individualized inquiry, given the highly idiosyncratic nature of developmental disabilities such as autism. Dkt. # 45 at 14.

The Court agrees with Plaintiff. Plaintiff's claims are typical of the other proposed class member's claims in that he, like the others, is a Plan participant, requires NDT or ABA therapy to treat a DSM mental health condition, and is subject to the

Development Delay Exclusion. *See, e.g., A.D. v. T-Mobile USA, Inc.*, 2:15-CV-00180-RAJ, 2016 WL 3882919, at *2 (W.D. Wash. July 18, 2016) ("Plaintiff's claims are also typical of class members' claims where he, like every other class member, allegedly was denied coverage for ABA therapy to treat his ASD"). While typicality "may be destroyed where the representative plaintiff is subject to unique defenses that would not apply to the class as a whole," the "unique" defense Defendants allege exist here do not rise to this level. *Weidenhamer v. Expedia, Inc.*, C14-1239-RAJ, 2015 WL 7157282, at *10 (W.D. Wash. Nov. 13, 2015). Plaintiff notes that Defendants did not challenge the medical necessity of Plaintiff's requested treatment during the administrative process, and the Court is reluctant to give much weight to this argument at this point. Dkt. # 46-5 at 4. Moreover, Defendants have failed to show how the few idiosyncrasies with D.T.'s treatment, to the extent they exist, are significant enough to mean that Plaintiff's core claim is not "reasonably coextensive" with those of the other class members. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (representative's claims are typical "if they are reasonably coextensive with those of absent class members; they need not be substantially identical.").

Accordingly, the Court finds that typicality is established.

4. <u>Adequacy of Representation</u>

The adequacy requirement under Rule 23(a) has two components: (1) whether any conflicts of interests exist between plaintiffs and their counsel and other class members, and (2) whether plaintiffs and their counsel will vigorously prosecute the action on behalf of the class members. Fed. R. Civ. P. 23(a)(4); *Hanlon*, 150 F.3d at 1020.

Defendants argue that D.T. is not an adequate representative because of various "conflicts" of representation that result from individualized differences among the class, including "individual medical necessity inquiries, standing issues, exhaustion of administrative remedies and the Plan's legal obligations with respect to parity on past claims and future coverage." Dkt. # 45 at 16. The Court has already rejected most of

these arguments above.  Moreover, Defendants fail to point to any actual evidence that conflicts of interest between D.T. and counsel and other class members, and the Court finds none.  As Plaintiff notes, the proposed class members, who by definition all have been diagnosed with a qualifying DSM condition, would each have an interest in a determination of whether the Parity Act mandates coverage for NDT and ABA therapy.  Dkt. # 34 at 15.  As for Plaintiff's counsel, the Court has little difficulty concluding that counsel has provided and will likely continue to provide adequate representation for the proposed class.  Dkt. # 34 at 15-16.

The Court finds that Plaintiff D.T. is an adequate representative for the class identified above.  Accordingly, the adequacy requirement is satisfied.

5. <u>Rule 23(b)</u>

Having concluded that all the Rule 23(a) factors are present, D.T. must now prove that at least one of the three prongs of Rule 23(b) is satisfied.  Fed. R. Civ. P. 23(b).  ERISA class actions "are typically certified under Rule 23(b)(1) and/or (b)(2) . . . ." *McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Trust*, No. C09-448-RSM, 268 F.R.D. 670, 677 (W.D. Wash. 2010).  Rule 23(b)(1)(A) "focuses on the rights of parties opposing the class," while subpart (B) "focuses on the rights of unnamed class members."  *Id.*  A class is appropriately certified under Rule 23(b)(1)(A) "where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  A class action is appropriately certified under Rule 23(b)(1)(B) if "separate actions inescapably will alter the substance of rights of others having similar claims." *McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Trust*, 268 F.R.D. at 677.

Under Rule 23(b)(1), class action is appropriate if prosecuting separate actions by individual class members would create a risk of inconsistent results that would establish

incompatible standards of conduct for the party opposing the class, or adjudications with respect to individual class members would be dispositive of, or substantially impair, the interests of the other putative class members not parties to the adjudication. Fed. R. Civ. P. 23(b)(1).

Defendants again argue that individualized issues unique to each class member, such as medical necessity, denial, and standing preclude certification under Rule 23(b)(1). Dkt. # 45 at 17. The Court again disagrees. "The issue confronting every proposed class member is whether Defendants may deny coverage" for NDT or ABA therapy for qualifying mental health conditions based on the Developmental Delay Exclusion. *K.M. v. Regence Blueshield*, C13-1214-RAJ, 2014 WL 801204, at *15 (W.D. Wash. Feb. 27, 2014) (granting certification under Rule 23(b)(1) for class of plan beneficiaries denied therapies under age exclusion). Instead, the opposite problem exists: variations in how participants or beneficiaries with qualifying conditions obtain coverage for NDT or ABA therapy would risk creating incompatible standards of conduct. As fiduciaries, Defendants are bound to follow the terms of the Plan. *Z.D.*, 2012 WL 1977962 at *7. Moreover, "ERISA requires that, 'where appropriate,' plan provisions must be 'applied consistently with respect to similarly situated claimants.'" *Id.* (citing C.F.R. § 2560.503-1(b)(5)). "Thus, were this Court to find that the Plan requires Defendants to act in a certain fashion, ERISA would require [Defendants] to act in a similar fashion toward all beneficiaries—the quintessential (b)(1)(B) scenario." *Id.* "[I]f another court were to interpret the Plan differently, it would trap Defendants 'in the inescapable legal quagmire of not being able to comply with one such judgment without violating the terms of another,'" which is what (b)(1)(A) was enacted to remedy. *Id.*; *see also Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 496 (N.D. Cal. 2010), ("Similarly, with respect to Rule 23(b)(1)(B), the resolution of Barnes' claim would be dispositive of other similarly situated plan participants because

ERISA requires plan administrators to treat all similarly situated participants in a consistent manner.") (internal quotations omitted).

The Court thus finds that the class is certifiable under Rule 23(b)(1). Alternatively, the Court also finds that the class is certifiable under Rule 23(b)(2) where the Court need only determine the requirements of the Parity Act as applied to the plan as a whole. Rule 23(b)(2) allows certification if the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Here, an injunction will prohibit Defendants' policy and practice of denying NDT or ABA therapies to treat qualifying mental health conditions based on the Developmental Delay Exclusion. Class certification under 23(b)(2) is therefore also appropriate.[2]

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Class Certification. Dkt. # 34.

DATED this 26th day of March, 2019.

*/s/ Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

---

[2] Because the Court certifies Plaintiff's proposed class under Rule 23(b)(1) and/or 23(b)(2), it need not and will not address Plaintiff's alternative arguments for certification under Rule 23(b)(3).