UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| D.T., by and through his parents and guardians, K.T. and W.T., individually, on behalf of similarly situated individuals, and on behalf of the NECA/IBEW Family Medical Care Plan,<br><br>Plaintiff,<br><br>v.<br><br>NECA/IBEW FAMILY MEDICAL CARE PLAN, THE BOARD OF TRUSTEES OF THE NECA/IBEW FAMILY MEDICAL CARE PLAN, SALVATORE J. CHILIA, ROBERT P. KLEIN, DARRELL L. MCCUBBINS, GEARY HIGGINS, LAWRENCE J. MOTER, JR., KEVIN TIGHE, JERRY SIMS, AND ANY OTHER INDIVIDUAL MEMBER OF THE BOARD OF TRUSTEES OF NECA/IBEW FAMILY MEDICAL CARE PLAN,<br><br>Defendants. | NO. 2:17-cv-00004-RAJ<br><br>**ORDER DENYING THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT** |

This matter comes before the Court on Plaintiff's Motions for Partial Summary Judgment (Dkt. ## 77, 97) and Defendants' Motion for Summary Judgment (Dkt. # 100). The Court has considered all of the evidence presented together since many of the issues overlap. Having thoroughly considered the parties' briefing and the relevant record, the

ORDER – 1

Court finds oral argument unnecessary. For the reasons that follow, the Court **DENIES** the parties' Motions.[1] Dkt. ## 77, 97, 100.

## I. BACKGROUND

This case involves benefits coverage for children with developmental mental health conditions such as Autism Spectrum Disorder ("ASD"). Plaintiff D.T. ("Plaintiff") is a three-year old boy who has been diagnosed with ASD. Plaintiff is covered as a dependent-beneficiary under the Defendant NECA/IBEW Family Medical Care Plan (the "Plan"). The Plan is a multiemployer health and welfare plan within the meaning of Section 3(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1), that has been established pursuant to an agreement entered into between the International Brotherhood of Electrical Workers ("IBEW") and the National Electrical Contractors Association ("NECA") for the purpose of providing major medical benefits to covered employees. Dkt. ## 11-1, 11-2. The Plan is administered by a Board of Trustees, also named as defendants in this action (collectively, the "Defendants").

Plaintiff was prescribed Applied Behavior Analysis ("ABA") and neurodevelopmental therapy to treat his ASD. Dkt. # 17-1, Exs. B-D. However,

---

[1] As a preliminary matter, Defendants ask the Court to strike "incorrect representations of fact" from Plaintiff's briefing. See Dkt. # 88 at 2-3; Dkt. # 125 at 3. Defendants also take issue with Plaintiff's experts' declarations because they "cannot be considered for the purpose he attempts to use them." Dkt. # 88 at 3; Dkt. # 125 at 3. Somewhat inexplicably, however, Defendants do not identify the "incorrect representations of fact" or articulate the purportedly improper purpose of the expert declarations. Regardless, the Court has only considered admissible evidence and to the extent Plaintiff has made assertions that are not supported by the record, the Court has disregarded them. Plaintiff also moves to strike Defendants' "illustrative exhibits" (Dkt. ## 89-2, 126-1, 126-2, 126-3) and the declarations of Vicki Burrows (Dkt. # 126-4), Christy Piti (Dkt. # 126-6), and Michael Sirni (Dkt. # 126-6). Dkt. # 134 at 13. Because the Court has not substantively relied on the exhibits and declarations at issue for the purposes of deciding this motion, Plaintiff's motion to strike is DENIED as moot. The Court makes no judgment as to whether this evidence will be admissible at trial.

Plaintiff was denied coverage for these treatments, both initially and on appeal. After the Board of Trustees denied the appeals, the Plan's legal counsel sent Plaintiff's parents a letter outlining the basis for the denial of coverage. Dkt. # 11-5; Dkt. # 11-6. The Plan also denied coverage of ABA and neurodevelopmental therapies for other Plan beneficiaries. Dkt. No. 17-1, Exh. C.

On January 4, 2017, Plaintiff brought this class action lawsuit alleging that Defendants' denial of ABA and neurodevelopmental therapies on the basis of its Developmental Delay Exclusion violates the Employee Retirement Income Security Act ("ERISA") and the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act ("Federal Parity Act"). Plaintiff asserted three ERISA claims against Defendants: (1) recovery of benefits; (2) breach of fiduciary duty; and (3) equitable relief. Id. at ¶¶ 26-39.

On June 8, 2018, Plaintiff moved to certify the class. Dkt. # 34. The Court granted class certification and defined the class to include:

> All individuals who:
> 
> > 1) Have been, are or will be participants or beneficiaries under the NECA-IBEW Family Medical Care Plan at any time on or after January 4, 2011; and
> > 
> > 2) Require neurodevelopmental therapy (speech, occupational or physical therapy) or applied behavior analysis therapy to treat a qualified mental health condition.
> 
> Definition: The term "qualified mental health condition" shall mean a condition listed in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association to which defendants applied and/or currently apply the Plan's Developmental Delay Exclusion.

Dkt. # 54. On September 12, 2019, Plaintiff filed a Motion for Partial Summary Judgment as to the Class's eligibility to benefits under the plain language of the Plan's terms. Dkt. # 77. Plaintiff later filed a second Motion for Partial Summary Judgment regarding the Federal Mental Health Parity Act. Dkt. # 97. Defendants also filed a

ORDER – 3

Motion for Summary Judgment regarding the Federal Mental Health Parity Act. Dkt. # 100.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

Despite this mandate, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the non-moving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha*

*Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. v. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).[2]

### III. STANDARD OF REVIEW

A challenge to an ERISA plan's denial of benefits is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan gives the administrator or fiduciary discretionary authority, the court applies an "abuse of discretion" or—what amounts to the same thing—an "arbitrary and capricious" standard. *See Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1471 n. 2 (9th Cir. 1994).

Here, the Plan grants the Trustees discretionary authority to determine eligibility for Plan benefits and to construe the terms of the Plan. Dkt. # 11-3, Article II. A deferential standard therefore applies to the Trustees' interpretation of the Plan language and eligibility for benefits. Plaintiff argues, however, that that this discretionary standard should not apply because it was the Plan's counsel that ultimately made the substantive interpretation of the scope of the Developmental Delay Exclusion and the Trustees have not formally delegated their discretion to the Plan's counsel. Dkt. # 123 at 13.

---

[2] Many of the deposition transcripts submitted in support of the Motions suffer from authentication problems. *See e.g.,* Dkt. # 81-2. Under *Orr. v. Bank of America, NT & SA,* a deposition transcript must identify the deponent and the action and include the court reporter's certification to be authenticated in a motion for summary judgment. 285 F.3d 764 (9th Cir. 2002). Although accompanied by cover pages, none of the transcripts contain a signed reporter's certification. Under Rule 901(b)(4), however, the excerpts may also be authenticated by reviewing their contents. Here, the excerpts contain a cover page identifying the deponent, the action and the time and place of the deposition, accordingly the Court finds they are sufficiently authenticated under Rule 901(b)(4). *See Renteria v. Oyarzun*, CV No. 05–392–BR, 2007 WL 1229418, *2 (D. Or. Apr. 23, 2007).

ORDER – 5

Defendants argue that the Trustees did in fact make a substantive interpretation of the Developmental Delay Exclusion when they reviewed and ultimately denied Plaintiff's appeals. Dkt. # 88 at 19; Dkt. # 136 at 9. Plaintiff objects to Defendants' characterization, noting that the Board of Trustee meeting minutes where the Trustees purportedly denied coverage based on the Developmental Delay Exclusion lack any "interpretation or analysis." Dkt. # 90 at 7; Dkt. # 124, Exs. A-N.

Plaintiff points to a Third Circuit case, *Gritzer v. CBS*, where the court applied a de novo review to a plan that otherwise granted discretion to the trustee because the trustee failed to exercise its discretion. Dkt. # 123 at 13 (citing *Gritzer v. CBS, Inc.*, 275 F.3d 291, 296 (3d Cir. 2002) (It is the "trustee's analysis, not his or her right to use discretion or a mere arbitrary denial, to which a court should defer.")). In *Gritzer*, however, the plan had not only failed to substantively respond to the employees' claims, they did not respond at all. *Gritzer,* at 295-96. Here, there is evidence that the Trustees did analyze Plaintiff's appeals before denying coverage. Dkt. # 124, Exs. A-N. The fact that the Plan's legal counsel also sent Plaintiff a letter explaining the basis for the denial of his appeal does not negate the Trustees' determination. The Court cannot conclude that simply because the meeting minutes do not articulate in detail the Trustees' deliberations that they did not interpret and apply the Developmental Delay Exclusion. Accordingly, the Court must review the Trustees' interpretation of the Plan language and benefits eligibility under the abuse of discretion standard.

## IV.  DISCUSSION

There are three motions for summary judgment pending before the Court. Dkt. ## 77, 97, 100. Plaintiff moves for summary judgment as to both the plain language of the Plan and the Federal Parity Act. Dkt. ## 77, 97. Defendant also moves for summary

judgment as to the Federal Parity Act. Dkt. # 100. The Court will address each of these arguments in turn.

### A. Plain Language of the Plan

In Plaintiff's first Motion for Partial Summary Judgment (Dkt. # 77) he argues that, separate and apart from the Federal Parity Act, the plain language of the Plan mandates coverage of treatment for ASD. Section 10.6 of the Plan of Benefits describes the "Covered Medical Expenses" including "Mental or Nervous Disorders Treatment." Dkt. # 11-3, at § 10.6.A. The Plan defines mental or nervous disorders treatment to include "inpatient treatment," "partial in patient/intensive outpatient treatment," and "outpatient or office treatment." *Id.* Importantly, the benefits described in the "Covered Medical Expenses" section are "subject to the maximum benefits and special limitations specified on the applicable Schedule of Benefits in the Appendix, and to Article III, **BENEFIT PLA.N CONDITIONS, LIMITATIONS AND EXCLUSIONS**." Dkt. # 11-3, at § 10.6.A (emphasis in original).

Defendants concede that the Plan covers treatment for some mental health conditions, but argue that ASD and other developmental health conditions are broadly excluded under the Developmental Delay Exclusion (the "DDE") which provides:

> Developmental delays, including charges for development and neuroeducational testing or treatment, hearing therapy, therapy for learning disability, communication delay, perceptual disorders, sensory deficit, developmental disability and related conditions, or for other special therapy not specifically included as a Covered Medical Expense elsewhere in this document, whether or not such disorder is the result of an injury or sickness.

Dkt. # 11-3, at § 3.1.B.7.

Plaintiff argues that the Developmental Delay Exclusion is not a blanket exclusion of all coverage for ASD, but rather a targeted exclusion of certain services for those conditions. Dkt. # 90 at 9. Plaintiff notes that in the Covered Medical Expenses section the Plan explicitly excludes occupational therapy "services related to learning

disabilities, developmental delays, mental retardation, brain damage not caused by accidental injury or illness, minimal brain dysfunction, or dyslexia." Dkt. # 11-3, at § 10.6.10(b). According to Plaintiff, if the DDE was, in fact, a blanket exclusion of all coverage, the additional occupational therapy limitation would be unnecessary and superfluous. Dkt. # 77 at 20; Dkt. # 90 at 11.

In addition, Plaintiff argues the text of the DDE clearly limits the scope of the exclusion to those services "not specifically included as a Covered Medical Expense elsewhere in this document." Dkt. # 90 at 10 (citing Dkt. # 11-3, at § 3.1.B.7. Because ASD is a mental disorder, as recognized by the Plan's 30(b)(6) witness and the Diagnostic Statistical Manual of Mental Disorders, Plaintiff argues that treatment for ASD is a "covered medical expense" under the plain language of the Plan. Dkt. # 77 at 5.

As discussed above, if the Plan language is ambiguous, *Firestone* requires the Court to defer to the Trustees' reasonable interpretation. Here, Plaintiff's interpretation is plausible based on the plain language of the Plan. The Plan language clearly defines mental health treatment as a "covered medical expense." Because ASD is widely understood to be a mental health condition, it is reasonable to assume that ASD would be covered. However, Defendants offer an equally plausible interpretation. Although the Plan includes coverage for mental health services, it also details limitations and exclusions, including the Developmental Delay Exclusion. Thus, a reasonable person could interpret that Plan to cover treatment for mental health condition but exclude ABA therapy for ASD.

Taking the facts in the light most favorable to Defendants, the Court cannot conclude as a matter of law that the plain language of the Plan mandates coverage of

ABA therapy for ASD.[3] Plaintiff's Motion for Partial Summary Judgment and a Permanent Injunction is DENIED. Dkt. # 77.

### B. Federal Parity Act

In a second Motion for Partial Summary Judgment, Plaintiff argues that the Developmental Delay Exclusion is unlawful under the Federal Parity Act, 29 U.S.C. § 1185a(a)(3)(A)(ii). Dkt. # 97. Defendants also move for summary judgment as to this issue. Dkt. # 100. The Federal Parity Act requires plans to ensure "treatment limitations applicable to . . . mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan." 29 U.S.C. § 1185a(a)(3)(A)(ii). The implementing regulations explain that the term "treatment limitations" includes both quantitative and nonquantitative limitations:

> Treatment limitations include limits on benefits based on the frequency of treatment, number of visits, days of coverage, days in a waiting period, or other similar limits on the scope or duration of treatment. Treatment limitations include both quantitative treatment limitations, which are expressed numerically (such as 50 outpatient visits per year), and nonquantitative treatment limitations, which otherwise limit the scope or duration of benefits for treatment under a plan or coverage. (See paragraph (c)(4)(ii) of this section for an illustrative list of nonquantitative treatment limitations.) A permanent exclusion of all benefits for a particular condition or disorder, however, is not a treatment limitation for purposes of this definition.

45 C.F.R. § 146.136(a); 29 C.F.R. § 2590.712(a) (emphasis added).

A person claiming a violation of the Federal Parity Act may allege an impermissible mental-health exclusion or limitation based on the express terms of the plan (a "facial" challenge) or based on the plan administrator's application of the plan

---

[3] Importantly, the Court's decision with respect to the plain language of the Plan is limited only to coverage for ABA therapy for ASD, as raised in Plaintiff's Motion (Dkt. # 77). The Court is not making a determination as to whether the "plain language" of the Plan excludes all coverage for ASD or developmental mental health conditions.

ORDER – 9

(an "as-applied" challenge). *Michael D. v. Anthem Health Plans of Kentucky, Inc.*, 369 F. Supp. 3d 1159, 1175 (D. Utah 2019) (citing *A.Z. v. Regence Blueshield*, 333 F. Supp. 3d 1069, 1081–82 (W.D. Wash. 2018)). In this case, Plaintiff asserts both a facial and as-applied challenge to the Developmental Delay Exclusion.

### i. Facial Challenge

Defendants argue that the Federal Parity Act does not mandate or require coverage of any specific benefits or conditions, and as such, the Plan's blanket denial of coverage for autism is not a treatment limitation under the Act. Dkt. # 100, at 14-17. The implementing regulations support this: "A permanent exclusion of all benefits for a particular condition or disorder . . . is not a treatment limitation for purposes of this definition." 45 C.F.R. § 146.136(a), 29 C.F.R. § 2590.712(a); [4] *see also A.F. ex rel. Legaard v. Providence Health Plan,* 35 F. Supp. 3d 1298, 1315 (D. Or. 2014) ("Providence would free under the Federal Parity Act not to cover autism. But after Providence chooses to cover autism, any limitation on services for autism must be applied with parity.").

However, it is hardly clear from the record that the DDE *was* a blanket exclusion of coverage. Defendants point to the Board of Trustees' meeting minutes to support their claim that the Trustees interpreted the DDE as a blanket exclusion of all coverage for ASD and developmental mental health conditions. Dkt. # 100 at 17. But the only "interpretation" that the Court can decipher from these meeting minutes is the Trustees' application of the DDE to exclude coverage of ABA and neurodevelopmental therapies.

Defendants also rely on letters sent by the Plan's legal counsel, after the Trustees reviewed and denied Plaintiff's appeals, to show that the Plan interpreted the DDE as a

---

[4] Plaintiff also argues, albeit in a footnote, that the "permanent exclusion" regulation is not binding because it is not based on the "actual text of the Parity Act" and "undermines the very purpose of the Parity Act." Dkt. # 123 at 15 n. 5. Because the Court is denying the parties' Motions on other grounds, the Court will not address this argument.

ORDER – 10

blanket exclusion. Dkt. # 100 at 16 (citing Dkt. ## 11-5, 11-6). But, as this Court has previously recognized, these letters were sent several weeks after the appeals determinations and cannot form the basis of a substantive Trustee determination. Dkt. # 53 at 8 n.1 (holding a "final determination" of Plaintiff's appeals occurred when the Board of Trustees denied the appeal, not when legal counsel sent the denial letter).

In addition, the Plan does not define what constitutes a "developmental delay" under the DDE. Defendants point to a list of diagnosis codes from the Plan's claim system but Plaintiff argues this list was prepared during the course of discovery and is not a formal interpretation of the Plan language. Dkt. # 123 at 10. Simply put, the Court cannot conclude as a matter of law that the DDE expressly excludes all coverage for ASD and developmental mental health conditions, sufficient to warrant a grant of summary judgment.

### ii. As Applied Challenge

Even if the DDE is not an express treatment limitation, Plaintiff argues that it is applied inconsistently by the Plan, in violation of the Federal Parity Act. Dkt. # 97 at 19. To establish an "as-applied" violation, a plaintiff must show that a defendant differentially applied a facially neutral plan term. *K.H.B. by & through Kristopher D.B. v. UnitedHealthcare Ins. Co.,* No. 2.18-CV-000795-DN, 2019 WL 4736801, at *5 (D. Utah Sept. 27, 2019) (internal citation omitted). Plaintiff argues that the DDE is, in practice, only used by the Plan to deny coverage for mental health benefits, not medical or surgical benefits. Dkt. # 97 at 19−20. Plaintiff notes that in the "handful of appeals" where the Trustees have applied the DDE, they have only applied the exclusion to deny coverage of ABA and neurodevelopmental therapies. Dkt. # 97 at 19−20.

Plaintiff also points to several examples where the Plan has covered speech or occupational therapy related to autism or other developmental mental health conditions. *See e.g.* Dkt. # 91-1, Exs. A, B, D; Dkt. # 37-1, Ex. E; Dkt. # 98, Ex. B. Defendants argue that some of these services were covered by "mistake" while others were not

ORDER – 11

services or treatment for ASD (or any other developmental mental health condition) but rather general benefits covered under the Plan, irrespective of whether an enrollee has ASD or another developmental delay. Dkt. # 136 at 7−8.

Here, there is competing evidence as to whether the Developmental Delay Exclusion was consistently applied to exclude coverage for all benefits related to ASD and other developmental mental health conditions. On this record, the Court cannot conclude as a matter of law that the DDE was consistently applied to exclude all coverage for ASD or developmental mental health conditions or alternatively that the DDE was a treatment limitation that was only applied to deny coverage for ABA and neurodevelopmental therapies. Because there remains a genuine dispute of material fact as to the definition of a "developmental delay" under the DDE and the application of the DDE by the Plan, the Court finds this issue is inappropriate for summary judgment.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment Regarding the Plan Language and Permanent Injunction. Dkt. # 77. Plaintiff's Motion for Partial Summary Judgment Regarding the Federal Mental Health Parity Act and Permanent Injunction and Defendants' Motion for Summary Judgment are also **DENIED**. Dkt. # 97, 100.

DATED this 18th day of December, 2019.

The Honorable Richard A. Jones
United States District Judge

ORDER – 12